JOHN C. CRUDEN
Assistant Attorney General
TAYLOR N. FERRELL, D.C. Bar No. 498260
JOSHUA P. WILSON, D.C. Bar No. 487829
Trial Attorneys
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 305-0874; Fax: (202) 305-0506
Taylor.ferrell@usdoj.gov
Joshua.wilson@usdoj.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| TINIAN WOMEN'S ASSOCIATION; GUARDIANS OF GANI; PAGANWATCH and CENTER FOR BIOLOGICAL DIVERSITY; <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE NAVY; RAY MABUS, Secretary of the Navy; UNITED STATES DEPARTMENT OF DEFENSE; and ASHTON CARTER, Secretary of Defense; <br><br> Defendants. | Civil Action No. 1:16-cv-00022 <br><br> **REPLY MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO DISMISS FOR LACK OF JUSRISDICTION** |

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................- 1 -

I. Plaintiffs' NEPA Alternatives Claim (Second Claim for Relief) is Non-Justiciable................................................................- 4 -

 A. Plaintiffs' "Alternatives" Claim Strongly Implicates the Two "Most Important" *Baker v. Carr* Factors...........................................- 6 -

  1. The Decision to Relocate Okinawa-Based Marines to Guam Is The Subject of a Binding International Agreement, And the Type of Foreign Policy Decision Committed to Executive Branch Discretion ........................................................- 7 -

  2. There are No Manageable Standards For the Court to Apply Here...................................................................- 8 -

 B. The Court's Analysis in *Center for Biological Diversity v. Hagel* is Applicable Here And Requires Dismissal of Plaintiffs' Claim...............- 10 -

 C. To the Extent that It Concerns the Proposed CJMT Training Regime, Plaintiffs' Second Claim for Relief Does not Target Final Agency Action ................................................................- 11 -

II. Plaintiffs' First Claim for Relief Does Not Challenge Final Agency Action ...- 11 -

 A. Plaintiffs' First Claim for Relief Alleges Segmentation of the Training proposed in CJMT Draft EIS .........................................- 12 -

III. Plaintiffs' Claims are Unripe, as Speculative Future Activity Cannot Be Meaningfully Analyzed as a Connected or Cumulative Action Under NEPA. ................................................................- 14 -

IV. To the Extent Plaintiffs' First Claim for Relief Challenges the Guam Relocation, That Claim Too is Non-Justiciable................................- 15 -

II. CONCLUSION................................................................- 15 -

# TABLE OF AUTHORITIES

**CASES**

*Abrahams v. Hard Drive Prods., Inc.*,
No. C-12-01006 JCS, 2012 WL 5499853 (N.D. Cal. Nov. 13, 2012) ...................................- 14 -

*Alperin v. Vatican Bank*,
410 F.3d 532 (9th Cir. 2005) ............................................. - 6 -, - 7 -, - 10 -

*Baker v. Carr*,
369 U.S. 186 (1962) .......................................................... - 1 -, - 6 -

*Bennett v. Spear*,
520 U.S. 154 (197) ....................................................... - 12 -, - 13 -

*Chi. & Southern Air Lines, Inc*. v. Waterman Steamship Corp.,
333 U.S. 103 (N.D. Cal 2015) ...........................................- 10 -

*Cottonwood Environmental Law Center v. U.S. Forest Service*,
789 F.3d 1075 (9th Cir. 2015) ...........................................- 13 -

*Ctr. for Biological Diversity v. Hagel*,
80 F. Supp.3d 991 (N.D. Cal. 2015) ...................................- 10 -

*El Shifa Pharm. Indus. Co. v. United States*,
607 F.3d 836 (D.C. Cir. 2010) ...........................................- 8 -

*Headwaters, Inc. v. Bureau of Land Mgmt., Medford Dist.*,
914 F.2d 1174 (9th Cir. 1998) ...........................................- 7 -

*Ĭlio ʻulaokalani Coalition v. Rumsfeld*,
464 F.3d 1083 (9th Cir. 2006) ...................................... - 5 -, - 8 -

*Int'l Longshoremen's and Warehousmen's Union, Local 37 v. Boyd*,
347 U.S. 222 (1954) ..........................................................- 15 -

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) ..........................................................- 12 -

*Mālama Mākua* v. Rumsfeld,
163 F.Supp 2d 1202 (D. Haw. 2001) ...................................- 9 -

*National Audubon Society v. Department of the Navy*,
422 F.3d 174 (4th Cir. 2005) ........................................ - 5 -, - 9 -

*Savage v. Glendale Union High School, Dist. No. 205, Mariscopa Cty.*,
343 F.3d 1036 (9th Cir. 2003) ...........................................- 12 -

*Schneider v. Kissinger*,
412 F.3d 190 (D.C. Cir. 2005) ...........................................- 7 -

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ............................................................- 14 -

ii

*Texas v. United States,*
523 U.S 296 (1998)..................................................................- 15 -

*Thomas v. Peterson,*
753 F.2d 754 (9th Cir. 1985) ....................................................- 13 -

*Utah v. U.S. Dep't of the Interior,*
535 F.3d 1184 (10th Cir. 2008) ................................................- 14 -

*Vieth v. Jubelirer,*
541 U.S. 267 (2004).................................................................- 7 -

*Weinberger v. Romero-Barcelo,*
456 U.S. 305 (1982).................................................................- 6 -

*White v. Lee,*
227 F.3d 1214 (9th Cir. 2000) ..................................................- 12 -

*Winter v. Nat. Res. Def. Council,*
555 U.S. 7 (2008).....................................................................- 10 -

**STATUTES**

28 U.S.C. § 1361 ......................................................................- 2 -

42 U.S.C. §§ 4321-4370 ...........................................................- 4 -

**RULES**

Fed. R. Civ. P. 12(b)(1)............................................................- 15 -

iii

## INTRODUCTION

Plaintiffs allege that "the Navy refused to give detailed consideration" in its Environmental Impact Statements "to any alternate locations outside the Mariana Islands for stationing . . . Marines relocated from Okinawa."  Complaint for Declaratory & Injunctive Relief ¶ 87, Second Claim for Relief, ECF No. 1 ("Compl.").  On that basis — that the Navy allegedly did not consider whether the Marines should be relocated from Okinawa to another location alternative to Guam, *see also* Pls.' Opp. to U.S. Mot. to Dismiss for Lack of Jurisdiction 29 (ECF No. 21) ("Pls.' Opp. Br.") — Plaintiffs ask the Court to declare that the Navy has violated NEPA, vacate its decisions regarding the Guam relocation, and enjoin the United States from re-stationing Okinawa-based Marines to Guam.  Compl. 21.

As the United States argued in its Motion to Dismiss for Lack of Jurisdiction (ECF No. 19), the National Environmental Policy Act (NEPA) "alternatives" claim pleaded in Plaintiffs' Second Claim for Relief, raises a non-justiciable political question.  *See*. Mem. in Supp. of the U.S.'s Mot. to Dismiss 13-25 (ECF No. 20) ("U.S. Mem.").  The decision to relocate the Marines from Okinawa to Guam is a "political decision already made" by the United States Secretaries of State and Defense through a 2006 commitment to the Government of Japan, and a binding international agreement signed by the United States Secretary of State and Japan's Foreign Minister in 2009.  *Id.*; *Baker v. Carr*, 369 U.S. 186, 217 (1962).  As such, and because the Court cannot analyze Plaintiffs' claim without second-guessing the diplomatic and strategic judgments that underlie the selection of Guam as "the forward presence of the United States Marine Corps forces," in the Pacific, the Court lacks jurisdiction to decide Plaintiffs' claim.  *See* U.S. Mem. 1 & Exhibit 2, Guam International Agreement 1.

In their Opposition Brief, Plaintiffs attempt to muddy the waters, arguing that they "do not challenge Defendants' ultimate substantive decision to station or train relocated Marines in

- 1 -

the Marianas," Pls.' Opp. Br. 28-29, and acknowledging that the "ultimate substantive decisions regarding the relocation of Marines from Okinawa remain the Executive Branch's[.]" *Id*. at 20.[1] But those apparent concessions are contradicted throughout Plaintiffs' brief, where they argue that a NEPA lawsuit is an appropriate tool to attack collaterally the terms of the Guam International Agreement, Pls.' Opp. Br. 2, 33-34 & n.10, and ask that the Court direct the Navy to reconsider whether Okinawa-based Marines should be stationed in Guam. Pls.' Opp. Br. 29. However they characterize their claims, Plaintiffs' request that the Court analyze whether and to what extent the Navy should have considered "alternatives to Guam," raises a non-justiciable political question; the Court lacks jurisdiction to enjoin the Guam relocation. Notably, Plaintiffs point to no case in which a Court has exercised jurisdiction to direct an Executive Branch agency to reconsider a course of Executive action that is the subject of a binding international agreement. And, to the extent that Plaintiffs are not requesting injunctive relief, Plaintiffs lack standing to request procedural relief that would not redress the alleged injuries Plaintiffs associate with the Guam relocation.

The Court likewise lacks jurisdiction to hear Plaintiffs' First Claim for Relief, which alleges that the Navy improperly completed its NEPA analysis of the Guam relocation without considering certain additional live-fire training facilities now proposed for Tinian and Pagan. *See* Compl. ¶¶ 68-73, 81-85. But these new training proposals — "the substantially more intense and destructive live fire training," discussed in paragraphs 68-73 and 82 of the Complaint — are part of the Department of Defense's (DoD's) Commonwealth of the Northern Mariana Islands Joint

---

[1]  Despite having asserted 28 U.S.C. § 1361 (actions to compel an officer of the United States to perform his duty) as a jurisdictional basis of their claims, Compl.¶ 5, Plaintiffs also hedge their request for injunctive relief, stating now that "it is unclear whether Plaintiffs will ever need to request an injunction."

Military Training on Tinian and Pagan ("CJMT") program.[2]  And, as Plaintiffs acknowledge, the proposed CJMT is the subject of ongoing study and review.  Compl. ¶ 80.  Because there is no final agency action for the CJMT, this Court does not have jurisdiction under the Administrative Procedures Act (APA) to review claims concerning those non-final CJMT training proposals.

In their Opposition Brief, Plaintiffs insist that they are not seeking review of the CJMT Draft Environmental Impact Statement (DEIS) and are only seeking review of the Navy's 2010 and 2015 records of decision (RODs) regarding Guam.  But Plaintiffs repeatedly cite to the CJMT DEIS, which they attach as Exhibit "N" to their Opposition Brief (ECF No. 22-14), as evidence of the training that they contend should have been considered in the 2010 Final Environmental Impact Statement (FEIS) and 2015 Supplemental Environmental Impact Statement (SEIS).  Plaintiffs' request for this Court to review whether that proposed CJMT training should have been considered in the FEIS and SEIS would require the Court to review the non-final CJMT DEIS.

Similarly, Plaintiffs' segmentation claim meets none of the tests for Article III ripeness. However Plaintiffs characterize their claim, their allegations regarding training on Tinian and Pagan necessarily seek preemptive review of the CJMT NEPA process.  But DoD has not yet made any decisions on those training proposals, and those proposals may never be implemented. If and when DoD makes a decision on CJMT proposals, Plaintiffs may then bring their NEPA claims related to proposed training on Tinian and Pagan.

---

[2] Plaintiffs refuse to acknowledge the distinction between the training proposals for the Marines' relocation to Guam and the training proposals to support the readiness requirements of PACOM Service Components (i.e., all Army, Navy, Air Force and Marines in PACOM's area).  As shown in the Whelden declaration, U.S. Mem., Ex. 7, the FEIS and SEIS examined the environmental effects of the Marine relocation, including the four training ranges on Tinian necessary to support the relocating Marines.  The CJMT training ranges, on the other hand, support U.S. Pacific Command (PACOM) training requirements for the entire region.

To the extent that Plaintiffs mean for their First Claim for Relief to challenge the Guam relocation itself, that claim raises the same problems that plague their Second Claim for Relief. For example, Plaintiffs warn that the United States may "cast the dye [sic] by bringing thousands of Marines to Guam only to discover years later that the training those Marines will need to conduct is far more destructive than ever anticipated."  Pls.' Opp. Br. 37.  But the die is cast:  the United States has made political commitments and entered into international agreements with Japan to relocate Marines to Guam.

## I.    Plaintiffs' NEPA Alternatives Claim (Second Claim for Relief) is Non-Justiciable

Plaintiffs' Complaint arises in the context of the Navy's robust and substantial efforts to comply with NEPA, 42 U.S.C. §§ 4321-4370, as the Navy works to implement the 2009 Guam International Agreement ("GIA").  *See* U.S. Mem. 4-11 & Ex. 2.  The GIA "emphasizes" "the importance of Guam for forward presence of the United States Marine Corps forces, which provides assurance of the United States' commitment to security and strengthens deterrent capabilities in the Asia-Pacific region," U.S. Mem., Ex. 2 at 1.  As amended by a 2013 Protocol, the GIA also commits $2,800,000,000 in Japanese funding "to develop facilities and infrastructure on Guam [and the Commonwealth of the Mariana Islands ("CNMI")] for the Relocation."  *Id.* at 4.  As embodied in the GIA, the United States and Japan have determined that the construction of facilities and infrastructure in Guam and the CNMI, and the movement of Marines from Okinawa to Guam, are the best way to address the complex security environment in East Asia.  U.S. Mem., Ex. 3 (Affidavit of Joseph M. Young, ¶ 18).

As Plaintiffs themselves point out in their Opposition Brief, the Navy has at all times acknowledged that specific actions in Guam and in the CNMI to *implement* the GIA are subject to NEPA.  *See* Pls.' Opp. Br. 12.  And it is undisputed in the record before the Court that the Navy has committed substantial resources to its NEPA compliance efforts.  In July 2010, the

- 4 -

1    Navy issued an FEIS to evaluate the relocation of approximately 8,600 Marines from Okinawa to

2    Guam.  *See* Compl. ¶ 59.  Following a 2012 Security Consultative Committee Joint Statement[3]

3    decreasing the number of Marines to be relocated to Guam from 8,600 to 5,000, the Navy

4    reevaluated its analysis for some aspects of the 2010 FEIS.  The Navy concluded that the

5    reduction in the number of Marines to be relocated to Guam would affect aspects of the actions

6    analyzed in the FEIS and approved in the 2010 ROD, such as the size and location of the

7    cantonment and family housing areas on Guam.  Compl. ¶ 74.  Accordingly, the Navy prepared

8    an SEIS to evaluate those changed circumstances.

9         What the Navy has not done as part of its NEPA analysis, and what Plaintiffs have no

10   basis to demand the Navy to do, is reconsider the fundamental strategic and diplomatic premise

11   of the United States' international agreement with Japan: i.e., to analyze as part of NEPA's

12   environmental compliance process *whether Okinawa-based Marines should be relocated to*

13   *Guam at all*.  That decision was a foreign policy choice made at the highest levels of the

14   Executive Branch, and formalized in an agreement with Japan that is binding under international

15   law.  U.S. Mem., Ex. 3, Young Decl. ¶ 4, ECF No. 20-3.  Plaintiffs' effort to upend the United

16   States' agreement with Japan raises a non-justiciable political question.

17        As discussed further below, Plaintiffs' contrary arguments are unavailing.  The several

18   cases Plaintiffs cite to show that courts weigh military objectives as part of NEPA, *Mālama*

19   *Mākua v. Cohen*, No. 1:00-cv-00813 SOM/LEK (D. Haw. Feb. 2, 2006); *National Audubon*

20   *Society v. Department of the Navy*, 422 F.3d 174 (4th Cir. 2005)), and that the domestic location

21   of military installations is sometimes subject to NEPA "alternatives" analysis, *ʻĪlioʻulaokalani*

22   *Coalition v. Rumsfeld*, 464 F.3d 1083 (9th Cir. 2006), deal with unilateral Army actions that do

23

24   _____

[3] As discussed in prior briefing, the Security Consultative Committee is a group consisting of the United States Secretaries of State and Defense and their Japanese counterparts.

not involve binding international agreements specifying basing locations or "alternative" military bases in foreign countries, and lack the foreign affairs dimensions of the Guam relocation. *See* Pls.' Opp. Br. 26-29. *See also id.* at 25 (discussing *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982)) (involving unilateral Navy action undertaken without a required Environmental Protection Agency permit). These cases did not even involve political question challenges.

Moreover, Plaintiffs' Opposition Brief confirms that there are no manageable standards for the Court to apply to determine whether the United States has adequately examined "alternatives" to the Guam relocation: Plaintiffs would have the Court use "tools of equity" to evaluate whether relocating troops to Australia instead of Guam could accomplish what the United States *and its ally Japan* have determined are the "security policy requirements to provide mutual defense, deter aggression, and dissuade coercion in the Western Pacific Region." Pls.' Opp. Br. 29 (quoting 2013 Protocol Amending the GIA). But that is exactly the kind of foreign policy decision-making the Constitution vests squarely within the Executive Branch.

Likewise unavailing is Plaintiffs' argument that because the United States and Japan have through high-level diplomatic channels modified some of the terms of their political commitments concerning the relocation, the Navy is empowered to do so unilaterally as part of a NEPA analysis. Plaintiffs cannot, through the auspices of a NEPA claim, seek to force the Navy to depart from those commitments.

### A. Plaintiffs' "Alternatives" Claim Strongly Implicates the Two "Most Important" *Baker v. Carr* Factors

As demonstrated in the United States' opening brief, Plaintiffs' NEPA "alternatives" claim triggers the concerns expressed in all six of the Supreme Court's *Baker v. Carr* factors. *See* U.S. Mem. 14-22 (citing *Baker*, 369 U.S. at 217). Dismissal on the basis of the political question doctrine is appropriate if even one of these criteria is met. *Id.*; *Alperin v. Vatican Bank*,

410 F.3d 532, 544 (9th Cir. 2005).  The first two factors are particularly important, *Vieth v. Jubelirer*, 541 U.S. 267, 277-78 (2004); *Alperin*, 410 F.3d at 545, and are dispositive of Plaintiffs' claims here.

### 1. The Decision to Relocate Okinawa-Based Marines to Guam Is The Subject of a Binding International Agreement, And the Type of Foreign Policy Decision Committed to Executive Branch Discretion

Plaintiffs do not dispute that Japan and the United States' bilateral decision to relocate Okinawa-based Marines to Guam is a "matter classically within the province of the political branches[.]"  *See* U.S. Mem. 16 (citing *Schneider v. Kissinger*, 412 F.3d 190, 196 (D.C. Cir. 2005)).  In fact, Plaintiffs appear to concede the point, stating that "[t]he ultimate substantive decisions regarding the relocation of Marines from Okinawa remain the Executive Branch's," Pls. Opp. Br. 20, and suggesting that they do not mean to challenge "Defendants' ultimate substantive decision to station and train relocated Marines in the Marianas."  *Id.* at 29.  But that is exactly what Plaintiffs aim to accomplish by asking the Court to direct the Navy to consider sites alternative to Guam.

Plaintiffs emphasize that "NEPA is a purely procedural statute," and that it "does not dictate Defendants' ultimate decisions regarding the locations at which Marines relocated from Okinawa will be stationed and trained."  Pls.' Opp. Br. 21.  That is true in theory.  But Plaintiffs' NEPA alternatives claim, as constituted, does not seek to ensure that the Guam relocation is implemented in a manner consistent with NEPA:  it is aimed at forcing the Navy, and the Court, to second guess the settled political decision to relocate Marines from Okinawa to Guam.[4]  The

---

[4] It is also worth noting that under the terms of NEPA, an "alternative" must be reasonable and capable of selection — and not inconsistent with the basic policy objectives of the federal action at issue.  *See e.g., Headwaters, Inc. v. Bureau of Land Mgmt., Medford Dist.*, 914 F.2d 1174, 1180-81 (9th Cir.).  Alternatives to Guam are inconsistent with the GIA, and not reasonable and capable of selection.

1  Constitution does not allow Plaintiffs to use NEPA and the judiciary to upend decisions reflected

2  in binding international agreements like the GIA here.  "[C]ourts are not a forum for

3  reconsidering the wisdom of discretionary decisions made by the political branches in the realm

4  of foreign policy or national security."  *El Shifa Pharm. Indus. Co. v. United States,* 607 F.3d

5  836, 842 (D.C. Cir. 2010).

6          The single case Plaintiffs cite to show that the Ninth Circuit "has not shied away from

7  adjudicating challenges to the military's failure to examine alternate locations for stationing

8  troops" is quite different from the force redeployment that is the subject of the GIA.  Pls.' Opp.

9  Br. 22 (citing *'Ilio'ulaokalani Coal. v. Rumsfeld*, 464 F.3d 1083 (9th Cir. 2006)).  In

10  *Ilio'ulaokalani Coalition*, the plaintiffs sought to prevent military operations from taking place in

11  Hawaii without considering locations outside Hawaii that might reasonably meet the Army's

12  purpose and need.  464 F.3d 1083.  But the Army exercises at issue there — the conversion of an

13  Infantry Brigade into a Stryker Brigade — did not involve a binding international agreement or

14  political commitment to a foreign ally, nor did it involve judgments by both the Secretaries of

15  State and Defense concerning the United States' long-term regional security interests.  The case

16  did not even involve a political question argument.

17          The GIA, which controls the scope of the Navy's NEPA analysis, and emphasizes the

18  strategic security importance of Guam, involves matters that go well beyond discrete, unilateral

19  military operations.  Because it concerns a negotiated matter of diplomacy, the Guam relocation

20  is committed to Executive discretion and not a proper subject for adjudication.

21          **2.   There are No Manageable Standards For the Court to Apply Here**

22          Plaintiffs contend that the Court may properly use "tools of equity" to decide whether the

23  Navy should have examined "non-Guam" alternatives in its NEPA analysis, and points to cases

24  where courts have weighed the priorities of the military against those of the environment.  Pls.'

Opp. Br. 27 (citing *Mālama Mākua v. Cohen*, Civ. No. 1:00-cv-00813 SOM/LEK (D. Haw. Feb. 2, 2006); *Nat'l Audubon Soc'y*, 422 F.3d 174. But the two cases Plaintiffs cite do not grapple with the political question doctrine, and concern unilateral and discretionary military action — not the implementation of an international agreement that does not contemplate the NEPA alternative action Plaintiffs advocate. The two cases also deal with more routine military matters on a much smaller scale than the strategic repositioning of United States forces in the Pacific.

For example, *Mālama Mākua* involved the question of where to conduct "routine training" in and around a military base in Hawaii that had been established since 1943. *See Mālama Mākua v. Rumsfeld*, 163 F. Supp 2d 1202 (D. Haw. 2001). *Nat'l Audubon* concerned the question of where in the Mid-Atlantic United States to locate an airstrip for a particular type of Navy aircraft. 422 F.3d at 181-83. These utterly conventional NEPA cases merely asked the Court to weigh local environmental interests against Army and Navy preferences for locating facilities within a range of options available for their consideration. These cases would be quite similar to the kind of NEPA challenge Plaintiffs might bring in this case if they were unsatisfied with the specific location for the cantonment facility intended for the Marines in Guam, or the specific location of the live-fire training ranges on Tinian that was studied in the Guam 2010 FEIS. But Plaintiffs' claim here does not ask the Court to undertake that type of equitable balancing. Instead, it asks the Court to substitute its judgment — or that of Plaintiffs — for the considered and negotiated judgment of the Secretaries of State and Defense of the United States and their counterparts in Japan that our national security interests in the Pacific are best served by relocating Marines from Okinawa to Guam.

The Court would have to weigh not only the "rapidly evolving security challenges," in the Pacific, Ex. 3, Young Decl. ¶ 21, and the "sustainability of the U.S. force presence in Okinawa," *id.* at 18, but also consider the potential fallout flowing from the United States' failure

1    to live up to commitments to its allies.  *See* Ex. 3, Young Decl. ¶ 19,  Ex. 8, Shear Decl. ¶ 17.

2    "Evaluating these types of harm is an exercise 'for which the Judiciary has neither aptitude,

3    facilities nor responsibility,' and thus they 'have long been held to belong in the domain of

4    political power not subject to judicial intrusion or inquiry.'"  *Ctr. for Biological Diversity v.*

5    *Hagel*, 80 F. Supp.3d 991, 1012-13 (N.D. Cal. 2015) (quoting *Chi. & Southern Air Lines, Inc*. v.

6    Waterman Steamship Corp., 333 U.S. 103, 111 (N.D. Cal 2015)), *appeal docketed, Ctr. for*

7    *Biological Diversity v. Carter,* No. 15-15695 (9th Cir. Apr. 9, 2015).

### B.  The Court's Analysis in *Center for Biological Diversity v. Hagel* is Applicable Here And Requires Dismissal of Plaintiffs' Claim

9            Plaintiffs have little to say about the Northern District of California's ruling in *Center for*

10   *Biological Diversity v. Hagel* other than "the Court simply got it wrong."  Pls.' Opp. Br. 28.  But

11   that case deals with some of the very same political commitments to Japan at issue here, and

12   concludes, as this Court should, that Plaintiffs' claims are non-justiciable.  Plaintiffs suggest that

13   the district court in *Center for Biological Diversity v. Hagel* court gave too much deference to

14   the military, arguing that "military interests do not always trump other considerations."  *Id.*

15   (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008)).  But what drove the court's

16   reasoning in that case was deference not to the military but to Executive prerogatives of

17   diplomacy and international relations that properly lie outside the realm of judicial review.  The

18   court ruled that to enjoin the construction of the Futenma Replacement Facility in Okinawa

19   would countermand a foreign policy decision entrusted to the Executive Branch, and " 'express a

20   lack of respect for the Executive Branch's handling of' U.S.-Japan relations[.]' " *Id.* at 1013

21   (*quoting Alperin*, 410 F.3d at 555).  So too here, where Plaintiffs ask the Court to intervene in the

22   movement of Marines to Guam pursuant to an international agreement.

23            Throughout their brief, Plaintiffs make much of the fact that the United States and Japan

24   have modified the 2006 Roadmap, and amended the GIA to reduce the number of troops to be

- 10 -

relocated to Guam, and to sever the Guam relocation from land returns in Okinawa.  These observations are non sequitur.  It remains the case that the United States is committed to relocate Marines to Guam, albeit at a reduced number, and that the still-binding GIA commits Japanese funds to build the infrastructure in Guam necessary to accomplish the relocation.  Neither the Navy —nor Plaintiffs through the NEPA process — may unilaterally impose a contrary judgment that Marines should be relocated elsewhere.

### C.  To the Extent that It Concerns the Proposed CJMT Training Regime, Plaintiffs' Second Claim for Relief Does not Target Final Agency Action

In addition to its focus on troop relocation to Guam, Plaintiffs' NEPA "alternatives" claim (Second Claim for Relief) alleges that the Navy failed to give detailed consideration in its 2010 FEIS or 2015 SEIS to any alternate locations outside the Mariana Islands for . . . *training* Marines relocated from Okinawa.  Compl. ¶ 87 (emphasis added).  As discussed in further detail below with respect to the Plaintiffs' First Claim for Relief, to the extent that Plaintiffs' "alternatives" claim asks the Court to consider the DoD's non-final CJMT proposal, that claim is non-justiciable for the added reason that it does not target final agency action.

## II.    Plaintiffs' First Claim for Relief Does Not Challenge Final Agency Action

Plaintiffs assert that their NEPA "segmentation" claim (First Claim for Relief) challenges final agency action because it alleges deficiencies in the 2010 FEIS and 2015 SEIS that support the Navy's Guam relocation decisions.  Pls.' Opp. Br. 35.  But Plaintiffs' claim unambiguously targets the CJMT training proposed for Tinian and Pagan — a future proposal that is still subject to agency review.  As established in the United States' opening brief and supporting declarations, DoD has not completed the decision-making process for the CJMT training and does not expect to issue a ROD until at least 2020.  U.S. Mem. 12, 27 & Ex. 7 (Whelden Decl. ¶ 7, ECF No. 20-7).  And the Navy has decided that no live-fire training ranges can or will be constructed in

Tinian or Pagan until after a CJMT ROD is issued.[5]  *See* Whelden Decl. at ¶ 7.  Thus, Plaintiffs'

First Claim for Relief, which alleges improper segmentation of these non-final training

proposals, seeks review of a non-final agency action, and the United States has not waived

sovereign immunity as to that claim.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882

(1990) (sovereign immunity waiver requires that plaintiffs must "identify some 'agency action'

that affects [them] in the specified fashion").

### A.    Plaintiffs' First Claim for Relief Alleges Segmentation of the Training proposed in CJMT Draft EIS

Plaintiffs seek to avoid the  *Bennett v. Spear*  final agency action analysis of the training at

issue in their segmentation claim, protesting that their Complaint "does not . . . challenge the

CJMT DEIS."  Pls.' Opp. Br. 34.  However they style their Complaint or characterize their

claims, Plaintiffs have the burden of providing evidence that establishes subject matter

jurisdiction.[6]  As shown in the Whelden declaration and in Plaintiffs' Exhibit "N" to their

Opposition Brief, the *substance* of Plaintiffs' First Claim for relief necessarily concerns the non-

final CJMT training proposed for Tinian and Pagan.

There are two distinct categories of proposed DoD training in the CNMI: (1) the training

considered by the Navy in the 2010 FEIS and ROD, including the four "pistol, rifle and squad

---

[5] Even though the 2010 ROD was the consummation of the Navy's decision-making process for the four selected ranges on Tinian, that deferred decision presents no current legal consequences for Tinian (or Pagan) and does not now affect the legal interests Plaintiffs advocate in their Complaint.

[6] Plaintiffs assert that this Court must accept as true Plaintiffs' allegations in the context of a Rule 12(b)(1) motion, Pls.' Opp. Br. 3.  However, the Ninth Circuit has held that, for a jurisdictional motion under Rule 12(b)(1), the court "need not presume the truthfulness of the plaintiffs' allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted).  *See also, Savage v. Glendale Union High School, Dist. No. 205, Mariscopa Cty.,* 343 F.3d 1036, 1039 n.2 (9th Cir. 2003), cert. denied, 541 U.S. 1009 (2004) ("[T] he party opposing the [12(b)(1)] motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.")

1    automatic weapon" ranges selected for construction on Tinian necessary to support the relocating

2    Marines (*see* Compl. ¶¶ 61-66 and Whelden Decl. ¶ 3) and (2) proposed training actions for the

3    non-final CJMT proposal to address training requirements in support of U.S. Pacific Command

4    (PACOM) operations in the Pacific (*see* Compl. ¶¶ 68-73 and Whelden Decl.¶¶ 4-5).  The

5    environmental impacts of the first category were considered in the 2010 FEIS, the same NEPA

6    document that considered the environmental impacts of the Guam relocation.[7]  The

7    environmental impacts of the second category of training are being considered as part of the non-

8    final, ongoing CJMT NEPA process.

9         When Plaintiffs complain of "proposed ramped-up live-fire training on Tinian and

10   Pagan," Pls.' Opp. Br. 36, they are, in substance, challenging the second category: the non-final

11   CJMT training proposal that remains subject to ongoing agency review.  And, accordingly, when

12   Plaintiffs allege that "the FEIS failed to analyze the impacts of all the live-fire training in the

13   CNMI that Marines relocated to Guam will need to conduct," Pls.' Opp. Br. 37, they are arguing

14   that the Navy should have analyzed in its 2010 FEIS the non-final CJMT training regime that is

15   now being considered as part of a separate DoD-led NEPA process.  Because DoD has not

16   consummated the decision-making process for joint military training on Tinian and Pagan, and

17   because there are now no direct legal consequences flowing from the CJMT proposal, the

18   proposal is not subject to review under the APA.  U.S. Mem. 26; *Bennett*, 520 U.S. at 177-78.

19        In their Response brief, Plaintiffs do not attempt to explain how their allegations

20   concerning the CJMT proposal meet the final agency action standard articulated in *Bennett*.

21   Instead, Plaintiffs analogize their segmentation claim to the one at issue *Thomas v. Peterson* 753

22   F.2d 754 (9th Cir. 1985), where the Forest Service considered the impacts of certain timber sales

23

24   _____

[7] As noted in our original brief, Plaintiffs cannot maintain a segmentation claim for actions
considered in the same EIS.  *See* U.S. Mem. 28, n. 5.

separately from the impacts of a road construction project that was designed to facilitate the

timber sales. *Id.* at 757. But the *Thomas* plaintiffs challenged the segmentation of four separate

and *completed* Environmental Assessments (EAs), and argued that those *final* actions should

have been considered together in a single EA. *Id.* Here, the CJMT DEIS, unlike the timber sale

EAs in *Thomas*, has not been completed and does not represent a final agency action. Thus,

unlike in *Thomas*, Plaintiffs have not established jurisdiction, and the merits of their

segmentation argument are not properly before the Court. *See Abrahams v. Hard Drive Prods.,*

*Inc.*, No. C-12-01006 JCS, 2012 WL 5499853, at *3 (N.D. Cal. Nov. 13, 2012), aff'd, 571 F.

App'x 551 (9th Cir. 2014) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998))

(the Court may not make a determination on the merits without first finding that there is subject

matter jurisdiction over the asserted claims).

### III. Plaintiffs' Claims are Unripe, as Speculative Future Activity Cannot Be Meaningfully Analyzed as a Connected or Cumulative Action Under NEPA.

Plaintiffs insist that their claims are ripe because they challenge deficiencies in the 2010

FEIS and the 2015 SEIS, which are "final." Pls.' Opp. Br. 39. But Plaintiffs' argument

mischaracterizes the substance of their claim and, at any rate, is insufficient to meet their burden

of demonstrating ripeness. As discussed above, and throughout the United States' Opening

Brief, Plaintiffs' claims, in substance, target non-final proposals for live-fire training on Tinian

and Pagan. The proposed CJMT training remains subject to ongoing NEPA analysis and may

never be approved at all. All three ripeness factors weigh in favor of deferring review of

Plaintiffs' claims until the completion of the ongoing CJMT NEPA process. U.S. Mem. 31-35.

One of the underlying rationales of the ripeness doctrine as it applies to agency actions is

to "protect[] the agencies from judicial interference until an administrative decision has been

formalized and its effects felt in a concrete way by the challenging parties." *Utah v. U.S. Dep't*

*of the Interior*, 535 F.3d 1184, 1191-92 (10th Cir. 2008) (citation and internal quotation marks

omitted).  Here, the speculative harm that Plaintiffs allege in the Complaint may never

materialize; indeed, the CJMT DEIS is currently being revised.  *See* Whelden Decl. ¶ 6.  Based

on the NEPA process, including the receipt of public comments, DoD ultimately may decide to

significantly down-scope the alternatives identified in the CJMT DEIS or abandon the action

entirely.  Plaintiffs' claim is unripe because it requires the Court to speculate on these possible

outcomes.  Judicial evaluation of an agency decision not yet made "involves too remote and

abstract an inquiry for the proper exercise of the judicial function."  *See Texas v. United States*,

523 U.S 296, 301 (1998) (quoting *Int'l Longshoremen's and Warehousmen's Union, Local 37 v.*

*Boyd*, 347 U.S. 222, 224 (1954)).

IV. **To the Extent Plaintiffs' First Claim for Relief Challenges the Guam Relocation, That Claim Too is Non-Justiciable**

To the extent that Plaintiffs argue that the United States might have selected an

alternative for Marine relocation *other than Guam* if — as Plaintiffs would have preferred —

both the Marine relocation and the CJMT training had been analyzed in the same document, Pls.'

Opp. Br. 37, that argument raises the same political question concerns that plague Plaintiffs'

attack on the Guam relocation.  The GIA contemplates relocation of Marines to Guam.

Moreover, Plaintiffs' argument is premised on unfounded speculation that the training analyzed

in the CJMT DEIS is "necessary" to relocate Marines to Guam, contrary to the purpose and need

statement in that document, and contrary to the declarations submitted with the United States'

Motion to Dismiss.  *See* U.S. Mem. Ex. 7, Whelden Decl. ¶ 6.

## **CONCLUSION**

For the foregoing reasons, and for the reasons stated in the United States' Motion (ECF

No. 19) and Memorandum in Support (ECF No. 20), Defendants respectfully request that this

Court dismiss Plaintiffs' claims for lack of subject matter jurisdiction under Federal Rule of Civil

Procedure 12(b)(1).

Respectfully submitted this 19th day of January, 2017.

JOHN C. CRUDEN
Assistant Attorney General

 */s/ Joshua P. Wilson*
Taylor N. Ferrell (D.C. Bar No. 498260)
Joshua P. Wilson (D.C. Bar No. 487829)
Trial Attorneys
U.S. Department of Justice
Environment & Natural
Resources Division, NRS
P.O. Box 7611
Washington, D.C. 20044-7611
Wilson Tel: (202)-305-0482
Ferrell Tel: (202) 305-0874
Fax: (202) 305-0506
Joshua.wilson@usdoj.gov
Taylor.ferrell@usdoj.gov

Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 19th day of January 2017, the foregoing was

electronically filed with the Clerk of the Court and served using the CM/ECF system upon all

attorneys of record.

> */s/ Taylor Ferrell*
> Taylor N. Ferrell
> Trial Attorney
> U.S. Department of Justice
> Environment & Natural
> Resources Division, NRS
> P.O. Box 7611
> Washington, D.C. 20044-7611

- 17 -